# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* TRUMBLE, Minor.

UNPUBLISHED
August 23, 2016

No. 330627
Gladwin Circuit Court
Family Division
LC No. 15-000029-NA

Before: OWENS, P.J., and SAWYER and SHAPIRO, JJ.

PER CURIAM.

Respondent appeals as of right from the order terminating her parental rights to the minor child under MCL 712A.19b(3)(a)(*ii*) (parent has deserted child for 91 or more days), (c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (likelihood of harm if returned to the parent). For the reasons stated in this opinion, we affirm.[1]

Respondent's sole argument on appeal is that the trial court erred when it did not sua sponte appoint counsel to represent her, despite her on-the-record waiver of counsel at the preliminary hearing, her failure to attend any subsequent hearings even though she was served with notice of each hearing, and her failure to respond to repeated direct contacts from Department of Health and Human Services (DHHS) staff informing her of the status of the case and the importance of appearing at the proceedings. She asserts that the trial court's failure to appoint counsel deprived her of due process.[2] After a full review of the record, we find no due process violation.

At the preliminary hearing, respondent stated that she was able to read the petition, that she wished to represent herself, and that she wished to make admissions and obtain a plan of service to help her: care for her child's special medical needs, obtain stability, and overcome her

---

[1] The trial court also terminated the parental rights of the child's putative father, but he is not a party to this appeal.

[2] "Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law" subject to review de novo. *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

serious drug abuse problem. When it appeared that respondent might not understand that her admissions might later be used as grounds to terminate her parental rights, the trial court specifically informed her of this fact and again reminded her that she could decline to make any admissions. The court also asked whether respondent was sure she wished to waive counsel, which she again confirmed. The trial court again advised respondent that her admissions "could lead to a request for termination" if she did not follow through with the treatment plan and respondent again stated that she wished to proceed. Thereafter, respondent admitted (1) that she had failed to take her daughter to any of her quarterly-scheduled appointments (or the rescheduled appointments) at the University of Michigan Hospital for treatment of her daughter's oligoarticular juvenile idiopathic arthritis, (2) that she had a methamphetamine abuse problem, and (3) that she lacked adequate housing for the child. Respondent also confirmed that the child had been placed with a maternal aunt and that she had no objection to that arrangement.

As of the dispositional hearing on August 4, 2015, nearly four months following the plea to jurisdiction, respondent visited her child no more than five times. Despite the ongoing proceedings and her responsibilities under the case service plan, respondent moved to Kentucky and then Indiana and she failed to comply with nearly every provision of the case service plan. She did make a phone call to the court at some point stating that she had hired an attorney and requesting that the August 4, 2015 hearing be adjourned. The court noted that no appearance had been filed, did not adjourn the hearing, and continued the previous orders.

Respondent, despite being served with notice of the hearing, did not appear at the next dispositional hearing which was on October 13, 2015. At that hearing, petitioner indicated its intent to seek termination and asked the court to consider appointing counsel for respondent "if the Court finds that that's necessary." Counsel for petitioner also stated that respondent had been served with the termination petition, that she had been contacted personally by telephone, and that respondent indicated her intention to remain in Indiana.

The termination hearing took place on November 10, 2015. Respondent did not appear despite being served and no appearance on her behalf was ever filed. Testimony was admitted that respondent had not visited the child since July 2, 2015, that she had only called the child three times, and that no progress had been made. The DHHS service specialist testified that he had reached respondent by telephone about 10 days before the hearing and had personally advised her of the termination hearing.

Parents have a fundamental liberty interest in making "decisions concerning the care, custody, and control of their children" that is protected by the due process clause of the Fourteenth Amendment to the United States Constitution. *In re Sanders*, 495 Mich 394, 409; 852 NW2d 524 (2014). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982). "[T]he nature of the process due in parental rights termination proceedings turn on a balancing of . . . the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure." *Id.* at 754, citing *Lassiter v Dep't of Social Servs*, 452 US 18, 27-31; 101 S Ct 2153; 68 L Ed 2d 640 (1981).

The court's failure to sua sponte appoint counsel, however, did not deprive her of due process. We have interpreted MCR 3.915(B)(1) to require "affirmative action on the part of the respondent to trigger the appointment and continuation of appointed counsel in all hearings which may affect the respondent's parental rights." *In re Hall*, 188 Mich App 217, 218; 469 NW2d 56 (1991). In *Hall*, the respondent relinquished her right to counsel when she "failed to contact her appointed counsel for sixteen months, did not appear at review hearings herself, and was residing at an unknown address in Chicago where counsel was unable to locate her." *Id.* at 222. Here, respondent's only appearance was at the preliminary hearing where she expressly and repeatedly declined the right to counsel despite the trial court's warnings. Further, like the respondent in *Hall*, she thereafter failed to appear at any review hearings. And despite being personally served with notice of the termination hearing while she was in Kentucky, respondent failed to attend it. Accordingly, on this record, because invocation of the right to appointed counsel requires "affirmative action on the part of a respondent," the trial court did not err in declining sua sponte to appoint counsel for respondent.

Respondent also argues that the trial court should have appointed counsel in light of the court's and the case worker's expressions of concern at various times with regard to whether she understood the seriousness of the proceedings. Where a child protective proceeding involves a parent "with *a known or suspected* intellectual cognitive, or developmental impairment," neither the court nor the petitioner "may sit back and wait for the parent to assert his or her right to reasonable accommodations," but rather "must offer evaluations to determine the nature and extent of the parent's disability and to secure recommendations for tailoring necessary reunification services to the individual." *In re Hicks/Brown, Minors*, ___ Mich App ___, ___: ___ NW2d ___ (Docket No. 328870, issued April 26, 2016), slip op at 16 (emphasis in original). In *Hicks/Brown*, "[c]aseworkers commented on the overt appearance of [the] respondent's impairment upon meeting her, as well as noting her difficulty in communicating on the telephone, her shyness and hesitancy, and her flat affect." *Id.* at ___; slip op at 1. "The only time that [the] respondent said anything beyond 'yes' or 'no' at any proceeding was at [the adjudication] trial." *Id.* at ___; slip op at 4. The manner in which the trial court judge spoke to respondent showed that it recognized her impairment. *Id.* at ___; slip op at 3. When the respondent in *Hicks/Brown* was eventually evaluated by a psychologist and psychiatrist it was determined that she had a very poor cognitive functioning. *Id.* at ___; slip op at 4.

The present case shows none of the overt appearances of cognitive impairment that were present in *Hicks/Brown*. At the preliminary hearing, respondent stated that she understood the consequences her admissions could bring but that she still wished to go forward with offering admissions. While obviously not an attorney, she was articulate and had no apparent difficulty participating in the proceedings including asking and answering questions. Further, the trial court's and the foster care worker's statements questioning whether, in light of her failure to appear at a hearing, respondent fully understood the nature of the proceedings occurred before the court was advised that respondent had an outstanding felony warrant,[3] which supported the

---

[3] We note that proof of outstanding felony warrants for respondent was presented at the termination hearing.

conclusion that respondent may simply have chosen to risk termination rather than risk being arrested on a felony warrant.

Having expressly and knowingly declined the offer of appointed counsel at the preliminary hearing and having never shown that she suffered from an obvious cognitive impairment, respondent has failed to show that the trial court denied her due process by declining to sua sponte appoint counsel.

Affirmed.

/s/ Donald S. Owens
/s/ David H. Sawyer
/s/ Douglas B. Shapiro